BRIAN D. VANN (DC Bar No. 494030)
vannb@sec.gov
100 F Street NE
Washington, DC  20549
Telephone: (202) 551-4274
*Attorney for Plaintiff*
U.S. Securities and Exchange Commission

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| U.S. Securities and Exchange Commission,<br><br>Plaintiff,<br><br>v.<br><br>Brian M. Kashman,<br><br>Defendant. | **Case No.**<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff U.S. Securities and Exchange Commission (the "Commission" or "SEC") files this Complaint against Brian M. Kashman ("Kashman" or "Defendant") and alleges as follows:

## SUMMARY

1. This case concerns insider trading in the securities of trucking company US Xpress Enterprises, Inc ("US Xpress" or "the Company") by Scottsdale resident Brian Kashman. Kashman purchased stock of US Xpress one day after learning that Knight-Swift Transportation Holdings Inc. ("Knight-Swift") was in negotiations to purchase the Company. Kashman misappropriated this material nonpublic information

1

from a long-time friend who held a senior position at Knight-Swift (the "Insider"). On March 21, 2023, US Xpress announced that Knight-Swift had made an offer to purchase the Company, resulting in a nearly 300% increase in the price of US Xpress stock. Shortly thereafter, Kashman sold his US Xpress stock, making more than $77,000 in illicit profits.

## VIOLATIONS AND RELIEF SOUGHT

2.    Through the conduct alleged in this Complaint, Defendant violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

3.    The Commission seeks a permanent injunction against Defendant, enjoining him from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains with prejudgment interest, a civil penalty, and such other relief as the Court may deem just and proper.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this action pursuant to Sections 21(d)(1), 21(e), 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(1), 78u(e), 78u-1, and 78aa]. In connection with the conduct described herein, Defendant directly or indirectly made use of a means of instrumentality of interstate commerce, or of the mails, or of a facility or a national securities exchange.

5.    Venue is proper in this district pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the acts constituting the violations in this Complaint occurred in this district, and the Defendant resides in this district.

**DEFENDANT**

6.     **Brian M. Kashman**, age 51, resides in Scottsdale, Arizona.

**FACTS**

7.     US Xpress is a trucking company with headquarters in Chattanooga, Tennessee. Prior to July 13, 2023, US Xpress was a public company whose Class A shares traded on the New York Stock Exchange under the symbol "USX."

8.     Knight-Swift is a trucking company with headquarters in Phoenix, Arizona. Knight-Swift is a public company whose common stock trades on the New York Stock Exchange under the symbol "KNX."

9.     By no later than October 2022, Knight-Swift was in negotiations to purchase US Xpress. The two companies executed a non-disclosure agreement on October 24, 2022.

10.     In or around November or December 2022, Kashman's long-time friend, the Insider, learned of the acquisition negotiations in the course of his employment at Knight-Swift. Over the next few months, as part of his employment, the Insider received updates on the progress of the acquisition negotiations. This information about Knight-Swift's potential acquisition of US Xpress was material and nonpublic.

11.     On February 7, 2023, Kashman was in the vicinity of Knight-Swift's headquarters for business. Kashman reached out to the Insider, and the two of them met in person that day outside of Knight-Swift's headquarters.

12.     Kashman and the Insider had been friends for more than 10 years. They typically met in person at least once a month, frequently to go for lunch or to go on a hike. They also had taken family vacations together. Kashman and the Insider frequently discussed issues they were having in their family and professional lives and shared personal confidences.

13.     During their conversation on February 7, 2023, the Insider mentioned to Kashman that Knight-Swift was in negotiations to buy US Xpress. At the time, the

3

Insider was worried about how the merger might affect staffing in his department at Knight-Swift. The Insider knew that the information about the potential acquisition was material and nonpublic and trusted his friend to keep the information confidential. The Insider did not expect his friend to trade on the material nonpublic information.

14.     The day after their meeting, February 8, 2023, Kashman sold $30,000 worth of shares of a mutual fund he held in a brokerage account. That same day, Kashman used these proceeds, and additional funds, to purchase 18,200 shares of US Xpress stock at $1.67 per share. Kashman purchased the US Xpress stock on the basis of the material nonpublic information he misappropriated from his long-time friend, the Insider. Kashman's purchase was the first time he had ever purchased US Xpress securities. Following this purchase, however, US Xpress stock comprised more than 80% of the value in the brokerage account Kashman used for the trades.

15.     When Kashman purchased the US Xpress stock on February 8, 2023, he misappropriated from the Insider material nonpublic information that Knight-Swift was in negotiations to acquire US Xpress. Kashman knew or was reckless in not knowing that this information was material and nonpublic. Kashman owed a duty of trust and confidence to the Insider by virtue of their relationship and their history of sharing confidences, and Kashman knew, or reasonably should have known, that the Insider expected that the information he communicated to Kashman would be kept confidential. Kashman knowingly or recklessly violated this duty of trust and confidence when he purchased US Xpress stock on the basis of the material nonpublic information he had learned from his friend.

16.     On March 21, 2023, before the market opened, US Xpress announced that Knight-Swift had made an offer to purchase the Company at $6.15 per share. Based on

that announcement, the price of US Xpress stock rose nearly 300%, and closed that day at a price of $5.98 per share.

17. On March 22, 2023, Kashman sold his 18,200 shares of US Xpress stock at $5.95 per share. Kashman's illicit profits from his unlawful trading totaled $77,723

## **CLAIM FOR RELIEF**

### **Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**

18. The Commission re-alleges and incorporates by reference each and every allegation contained in the paragraphs above.

19. By engaging in the conduct described above, Defendant, directly or indirectly, in connection with the purchase or sale of securities, by use of means or instrumentalities of interstate commerce, or of the mails, with scienter: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

20. By reason of the foregoing, Defendant, directly or indirectly, violated, and, unless enjoined, is reasonably likely to continue to violate, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court issue a judgment:

### **I.**

In a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining Defendant from, directly or indirectly, violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5

thereunder [17 C.F.R. § 240.10b-5] by: (i) buying or selling a security of any issuer, on the basis of material nonpublic information, in breach of a fiduciary duty or other duty of trust or confidence that is owed directly, indirectly, or derivatively, to the issuer of that security or the shareholders of that issuer, or to any other person who is the source of the information; or (ii) by communicating material nonpublic information about a security or issuer, in breach of a fiduciary duty or other duty of trust or confidence, to another person or persons for purposes of buying or selling any security;

**II.**

Ordering Defendant to pay a civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1(a)(2)];

**III.**

Ordering Defendant to disgorge all ill-gotten gains by which he was unjustly enriched, with prejudgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(5), and 78u(d)(7)]; and

**IV.**

Granting any other and further relief this Court may deem just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the SEC hereby requests a trial by jury.

Dated:  July 21, 2025

*/s/ Brian Vann*

Brian Vann
*Attorney for Plaintiff*
U.S. Securities and Exchange
Commission